## The John W. Hall.*

### (District Court, E. D. Pennsylvania. July 21, 1882.)

ADMIRALTY—CRUSHING OF BARGE IN DOCK—BURDEN OF PROOF.

 A schooner at high water went into a dock, between a loaded barge and another schooner. There being insufficient room at low water for all the vessels, the barge on the fall of the tide was crushed. There was evidence that the superintendent of the dock had ordered the barge to drop astern of the entering schooner, but the testimony left it doubtful whether the barge could have moved, and whether there was room for her to lie astern of the schooner. *Held*, that the schooner having entered where there was insufficient room, was *prima facie* liable for the injury, and the proof having failed to satisfy the court that the barge could have moved, the latter was entitled to a decree.

Libel by the owner of the barge Halsey against the schooner John W. Hall, to recover damages for the crushing of the barge. The facts were as follows:

On June 26, 1878, the Halsey was lying at Pier 1, Port Richmond, loading. On the opposite side of the dock, at Pier 2, was the schooner Mellon. The John W. Hall, having been ordered to Pier 1, attempted to enter the dock, but grounded and lay across the entrance. Late in the afternoon the Halsey finished loading, and about 9:30 in the evening, the tide having risen sufficiently to float the Hall, the latter hauled in between the Halsey and the Mellon. When the tide fell there was not enough space in the dock for the three vessels to lie abreast, and the Halsey was crushed. On the part of libelant it was claimed that after the Hall had entered the dock the Halsey had not room to move out, and that, even if she could have moved, there was not sufficient length of pier to have enabled her to lie astern of the Hall. On the part of the respondent it was claimed that, by the rules of the port, the Halsey being loaded was bound to drop astern of the Hall; that there was

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

enough space between the vessels at high water and sufficient length of pier to have enabled her to do so; that she was ordered to do so by the dock superintendent, and that her captain promised to do so at the time the Hall entered.

*A. L. Wilson* and *John G. Johnson,* for libelant.
*Curtis Tilton* and *Henry Flanders,* for respondent.

BUTLER, D. J. The dock afforded insufficient room for respondent, and the vessels there before her, to lie abreast. Crowding in, under the circumstances, she is *prima facie* liable for the injury sustained by libelant, and must justify herself or be held responsible. She seeks justification in an effort to show that libelant should have moved out. Unless the effort is successful she is defenseless.

Should libelant have moved out? She finished loading before 6 o'clock. Conceding it to have been her duty then to move out, if nothing prevented, it is a sufficient answer that respondent was in the way. She had grounded across and closed the channel, and so remained until near 10 o'clock. At that time,—when afloat,—she did not open the passage and invite libelant out, but, changing position slightly, crowded in. To expect libelant to go out, into the river, at that hour, was unreasonable. She was without motive power, and unprepared to lay outside the dock. Blame is not imputable for this want of preparation,—the nature of the craft, and the usages of its class, being considered. It is unreasonable to suppose that respondent could imprison her until such an hour and then order her out. The reason assigned,—that respondent would otherwise lose a tide,—is entitled to no weight. She had already lost a tide, and if she lost another it would be the result of her folly, or misfortune, in grounding. It did not entitle her to keep libelant in or drive her out at pleasure, irrespective of circumstances. The regulations of the port and orders of the superintendent or master, do not affect the question. The regulations must be reasonably interpreted. They no more required libelant to go out into the river at such an hour, than they did to go out when penned or wedged in. The orders of the superintendent or master will not justify encroachment upon another's rights. If libelant could have moved back and still laid within the dock, she, doubtless, should have done so. Whether she could move back after respondent entered, (she had no opportunity before, as I understand the evidence,) and whether there was room thus to lie in respondent's rear, is open to serious doubt. The testimony respecting both these points is in direct conflict. I deem it sufficient to say that in my judgment it was not proved either that libelant could move back, with the force at command, or that she could safely lay as suggested. The

testimony of Capt. Young, of the Mellon, a disinterested witness, who saw the situation and is competent to form a reliable judgment, is flatly against respondent on both points. It is possible, and I think probable, there were a few more inches space than the vessels occupied, at high water. From the situation when respondent entered, however,—the crowding, and necessity for removing fenders,—the inference is justifiable that the unoccupied space, if any, was very small. With the vessels afloat and a few inches thus to spare, they would doubtless bind,—resting against each other in places, and in other places against the piers,—rendering considerable force necessary for the removal of either. Without speculating on the subject, however, it is sufficient that the evidence does not prove the respondent's allegation in this respect.

Did libelant promise to move out, as charged? If she did, it was not until respondent was nearly in; and if therefore she was mistaken respecting her ability to get out, the promise was unimportant,—as it did not mislead. But did she so promise? Capt. Hudson and his mate say Capt. Gallagher promised to move out when they should get in, as they were crowding by. This is distinctly and positively denied by Capt. Gallagher; and when his situation and conduct, at the time and after, are considered, the probabilities seem to be with the denial. Capt. Young says he heard Capt. Gallagher tell some one on board respondent, that he could not go out that night, that his men were all gone.

Capt. Hudson's conduct and conversation, when forcing his way in and after the accident, seem to show consciousness of wrong. More than once, as he entered, he alluded to the danger of "squeezing," and after his fears had been realized, Capt. Young says, "he asked me, about an hour after the boat was sunk, if I thought he was to blame; and I told him that in case of a lawsuit I thought it would ╮ ) pretty hard with him. He said he thought he was not to blame; I said I thought he was. * * * He did not say the captain of the barge had said he would go out."

The libelant must have a decree for his damages.